First case for argument this morning is 22-1884, Wisconsin Alumni Research Foundation. This is Mr. Chu. Good morning. Please proceed. Good morning. Morgan Chu for the Wisconsin Alumni Research Foundation. With me is my colleague, to my right, Amy Proctor. And to her right, Stephanie Adebany, who is the General Counsel of WARP. I want to start with WARP 2. There should not be any claim preclusion because the issue in the first case has to be the same as the issue in the second case. The first case, we, WARP, sought to add the newer Apple processors, A9 and 10. Apple objected, opposed, and they were successful. Can I ask you just to get one fact straight? Do you now agree or accept that with respect to the claim limitations that are relevant for infringement, the A9, A10 processor is materially the same as the A7, A8? We do not. What happened is there was just a tiny bit of discovery in WARP 2. Right. I know that this was once a subject of some uncertainty. I don't quite remember in your briefs here disputing that any longer. We now have the software and we have a declaration from somebody from Apple that at least asserts they are relevantly the same. It includes excerpts of code, which I'm afraid I cannot read, so I can't tell. I don't see anything to the contrary. In particular, I don't see contrary assertions in your blue or gray brief. Maybe I've missed one. In our opening brief, I think at about page 47 and surrounding, we make reference to mostly one paragraph in the district court's opinion. Where the district court said there was undisputed evidence that the things were the same. I can cite the portions of the record where we hotly dispute it. An example is Appendix 13067, which is an Apple document that shows a prediction table that uniquely identifies the load instructions that would cause the mis-speculation. There are other citations to the record. I'm sorry. I guess I'm just trying to get one. There's a lot going on in this case. Yes. It's enormously confusing. There are a variety of doctrines in play about a problem that can be described at a common sense and high level of generality where that common sense description of what's going on does not, on its own, point to a single solution. We're talking about very specific doctrines that involve competing policies and themes. Yes. One of the facts that is relevant sometimes for issue preclusion, that's sometimes relevant for claim preclusion, sometimes relevant for Kessler, whatever that may be, is the material identity or difference of the product in Case 2 and the product in Case 1. I took from your briefs that none of the arguments being made said we still think that the relevant code in the A9, A10 is different with respect to infringement from the relevant code in the A7, A8, and A8+. If I can explain. We don't know. The reason is, aside from having an opportunity to look at some code, there was no other discovery. Can you point to me something in either your blue or gray brief that says it is still an open and contested issue whether the A9, A10 software module has the same features that were found with respect to the A7, A8 to be not literally infringing? Yes. I think I understand Your Honor's question. At the top of page 47 of the opening brief, the issue actually being discussed there is claim vitiation. What the district court said, it based its holding on claim vitiation, which it raised to a sponte, on the, quote, undisputed evidence about the LSD predictor. The very next sentence, but WRF has consistently disputed this finding and the record establishes that it is in fact disputed. I need to add to that what the state of discovery in WRF2 was. If I may, Your Honor, we did have an opportunity to review some source code. We had no written discovery, interrogatories, other document productions of any kind. We did not take any fact depositions. There were no expert reports. There were no expert depositions. Then all of the activity in WRF2 was stayed pending appeal. We did see that declaration that Apple submitted when the case went back to the district court without additional discovery. It was a declaration that was conclusory. Can I ask, and then I will leave you alone on this topic. The document 13067 is a document from 2011. It could not possibly have been talking about A9, A10, could it? Let's see. I thought that didn't come up until, I don't know, 2015 or 2016? The, let me get the... The versions of the product. Yeah, yeah, yeah. Bad windstorm names. Yes, right, right, right. So the trial was in 2015, October. We were permitted to... Just before trial, you tried to get the A9, A10 into the case. Oh, actually earlier. Well, somewhat before trial. Okay, but we did... 2014 maybe? No, we, I don't remember the exact date, but what's relevant here, before the trial, we did file, we called for shorthand. 2014, 2014 is when the discovery motions were presented. So at that point, I guess A9, A10 were enough in process, but only... Well, here's what the play was before the district court. Earlier than when we filed the complaint for WARF 2, we wanted to add A9 and 10 to WARF 1. And as I mentioned earlier, that was opposed by Apple, and they were successful. There was some passage of time, but it's still before the trial in WARF 1, which was, I believe, October 2015. I'm just getting back to this point, and I'm sorry it takes so long, but it's sort of foundational for how to think about everything else. You cited a document from 2011 about how software works. I don't understand how that document could be about the point that I'm getting at, which is whether the A9, 10 software works differently in a relevant respect from the A7, A8. I understand that, and I think my main point is we didn't have an opportunity to take normal discovery because, aside from what I've already mentioned, discovery was completely stayed. So we can't agree with the conclusory allegation in a declaration from 2019, and we want the opportunity to test that. Second, and this is pretty important, we're not asking to go back on literal infringement. We are only asking in both WARF 2 and WARF 1 to have an opportunity to try doctrinal equivalence. We certainly didn't have the opportunity to do that in WARF 2, and we didn't do that... I'm sorry, you did have an opportunity to do it. You just decided it wasn't worth the cost of Apple introducing a recent patent of its own. I may have misspoken. My sentence I intended to state, in WARF 2, we had no opportunity to try doctrinal equivalence or, for that matter, literal infringement. It never went to trial. All the discovery was stayed. WARF 1, let me address that because I think it's an important question you're asking about. WARF 1 is parallel to this court's decision in the Exxon versus Lubrizol case. In Exxon, plaintiff Exxon, pleads literal and doctrinal equivalence infringement and litigates the case with that, so too here in WARF 1. Let me just tell you how I'm thinking about Exxon so you can address what's in my mind. Exxon involved a situation that I think is different from this. In Exxon 1, the district court gave Exxon the claim construction it asked for, and Exxon 1, in footnote number 5, in Exxon 1 says, at that point, the question of literal infringement was, and I think I'm quoting correctly, essentially uncontested. In Exxon 2, this court says, in a relatively brief section about the abandonment issue after it discussed the mandate issue, said that the doctrinal equivalence issue became moot once the district court granted Exxon the claim construction. We don't have that. We have a situation in which it's perfectly clear that although on appeal, we did in fact change the claim construction by making the choice that at trial was presented as a dispute between the two sides about the scope of the language of the claim construction, but not as a claim construction dispute. So it was very much not moot, not pointless for you in Wharf 1 trial to have presented your equivalence case in a way that it was utterly pointless because completely unnecessary, no possibility of being necessary in Exxon 1. My understanding of Exxon 1 is there was a claim construction contested where the court's claim construction would allow a jury to make a finding of infringement. Otherwise, it could have been decided on a motion before trial or during trial or at the close of evidence. So, too, in Wharf 1, there was a claim construction by the court which allowed the jury to find infringement, literal infringement. When you say there was a claim construction in Wharf 1 by the district court, you just mean the plain and ordinary meaning. Yes. Construction. Yes. The district court did say, but did not put into a jury instruction, the word single, that the prediction would be associated with a single load instruction, but it was plain and ordinary. Right, but then it appears that the parties had different conceptions of what the plain and ordinary meaning of particular was. That's why Apple's expert report had an understanding in particular that ultimately matched up with what this court ruled the plain and ordinary meaning of particular is. Is that right? There are a couple pieces there. In Wharf 1, the two parties had different interpretations of the claims applied to the evidence as to what plain and ordinary meant. In the Exxon case, there was also a difference because the issue of infringement ended up going to the jury. In both cases, the plaintiff could prevail before the jury on literal infringement. In Wharf 1, Wharf plaintiff withdrew the Doctrine of Equivalence. In the Exxon case, the plaintiff Exxon withdrew the Doctrine of Equivalence. There's an argument about whether the withdrawal in Wharf 1 was tactical or strategic, but so too in Exxon. They could have gone to trial on the Doctrine of Equivalence. They chose not to, so presumably it's a tactical or strategic decision at trial. I realize I'm taking up more than my share of the time, but just the point that I guess I'm inclined to read Exxon more narrowly as, in the end, dependent on Exxon 2's use of the word moot linking to Exxon 1, footnote number 5's statement that once the claim construction asked for by Exxon was given by the district court, the question of literal infringement was essentially uncontested. Maybe that could have been, therefore, a ground for a Jamal motion of infringement, but that's not the point. That doesn't mean that there was a kind of significant dispute to which an equivalence case would be relevant at the trial. There wasn't in Exxon. There was here because of the different conceptions of what plain and ordinary meaning. I think what's important is that the issue of literal infringement was decided by the jury under the trial court's claim constructions. The jury presumably could have decided the case either way. In both cases, there was a finding of literal infringement. In both cases on appeal, this court applied a new claim construction to the evidence and found that literal infringement could not be possible, and in Exxon, Exxon went back to the district court and said, we would like to try the case on doctrinal equivalence. District court said no. Exxon goes back on appeal and says we ought to be able to try doctrinal equivalence. This court on the second appeal says yes. So too in the Wharf case. We lost before this court on a new application of claim construction applied to the evidence where this court found no reasonable jury could find literal infringement. Just so I understand, is it your view that under Exxon, there's really no way for a plaintiff to abandon a doctrinal equivalence theory in a first litigation that would waive the DOE in a subsequent litigation? I could think of ways where a plaintiff could say, I hereby waive forever or some other set of facts, but they're very parallel with the Exxon case, and there were arguments in Exxon case. There's something a little different here, though. I mean, one could argue that what happened here between the parties was that there was a bargain for exchange in the Wharf One when it came to maybe giving up the DOE theory in exchange for Apple not introducing its recently granted patent. And in that way, there's something different and a little more calculated than just choosing to withdraw DOE once a favorable claim construction was given in a Markman order. So I agree with that basic outline, but in both cases, the plaintiff was making, I'll call it a tactical decision, for whatever reason, not to pursue DOE. In both cases, the plaintiffs, Exxon and Wharf, thought they had a claim construction where they could prove literal infringement, and in both cases, this court ended up reversing, saying there's no literal infringement. It can only be DOE. I note that... Can I just... Oh, sure. I want to go back before my colleagues go off perhaps on other issues just to Judge Toronto. I don't want to beat a dead horse, but Judge Toronto's first point because I think it will come back to us in terms of whether the products are similar. So you pointed to your blue brief, but on your gray brief, pages 29 to 30, I understood you to say when you're talking at the top of 30, brought a quote. This is a statement made by Apple, not Wharf. It is also not inconsistent with Wharf's position, and we're talking about a statement that they are not colorably different. So I understood... That's why I've gone through this whole case, understanding that there was no dispute between the parties about whether or not the products were colorably different. Well, maybe that was not as clearly worded as statement, but saying something is not inconsistent isn't saying that one agrees. This is a discussion in the prior page about whether there are or aren't differences, and it's for literal infringement. In the Wharf opening brief at page 27, I think there's a clearer statement. The statement, there was an insufficient basis in the record for such a finding. Yes. The problem is that, as far as I could tell, you never made anything more of that. I mean, it's one thing to say there's an insufficient basis in the record for that finding, and then say, so it is our position that that remains a contested issue, and you must conduct your analysis both of reopening of Wharf 1 and of... We haven't even gotten to the really hard stuff, the Wharf 2 case. Your Honor, I may have missed it in when you were referring to that. Were you referring to the earlier pages we were discussing? No, no, no. The way... Page 27. Yes. You're at the top? Right. Okay. I mean, the district court can make an assertion for which there's an insufficient basis in the record, which then goes, essentially, undisputed on appeal, and then, you know, you're stuck with it. If I could just frame what the issue is that's being discussed here. The district court made a finding based on judicial estoppel. The first requirement of judicial estoppel must be that a party's later position, in the second case, must be clearly inconsistent with its earlier position. Wharf never agreed not to assert DOE under this court's new controlling construction, which occurred three years later. That's an exact parallel with the Exxon case. This court, on appeal, in the Exxon case, second appeal, it said, how can we hold Exxon to a plain construction that this court created anew... But you're talking about the Wharf 2 project now, not the Wharf 1 project. In terms of judicial estoppel, yes, that's right. And it's being... I think it's being applied, was applied, by the district court, basically, to conclude you're out of luck. You had an opportunity in the first case. And what we're saying is judicial estoppel cannot apply because the legal position was not clearly inconsistent because the controlling plain construction was three years later. But when you agreed in Wharf 1 to eliminate, avoid DOE, you did so before you had a jury break. So you didn't know what the plain construction, how this issue was going to come out, and what the plain construction might actually be by the federal circuit. So you didn't preserve your right under this plain construction or under what we think this plain construction is. You gave it up for a very explicit purpose. And that was a purpose that served you well. And you made a trade-off in Wharf 1. So your Wharf 1 concession and submission and agreement had nothing to do with... I mean, you thought one thing, the other side thought something else, and the federal circuit did with whatever we did. But your concession with regard to DOE wasn't predicated on any of that. Nobody knew how it was going to turn out. It actually was predicated knowing that there was a claim construction by the district court that would be consistent with a finding of literal infringement. That was the exact situation in Exxon. We did give it up before the case went to the jury. That was the exact situation in Exxon. In both instances, the plaintiffs, I'll call it for tactical reasons, for whatever reason, decided not to pursue the Doctrine of Equivalence. They did want to save some time for... Well, we do know why they decided not to. At least the record indicates they decided not to pursue it because they didn't want AFL to be able to put on the patent that they had. Seems like... I know both of you read the record a little differently, but it doesn't seem like to me like that point's in dispute. My point about the Exxon case is we do know from the opinion that DOE was not put before the jury. It was voluntarily withdrawn. I'm assuming very good counsel decided for tactical or strategic reasons. Sometimes it's a matter of simplicity for closing argument, for the jury instruction, for the verdict, for whatever it is. There can be tactical reasons to withdraw it. And I think what you're pointing out is in addition to having a claim construction consistent with literal infringement in WARF I, there may have been tactical reasons that WARF had in mind for voluntarily not pursuing DOE. It doesn't mean, if one follows Exxon, that the DOE issue is extinguished. If I may say sometime... No, don't worry about it. Okay, then I want to be as simple as possible. I appreciate it, but don't worry about the time. Thank you. So why should we not view the issue as the issue of infringement so that in May of 2022, when the district court in the WARF I case entered a judgment of non-infringement, that creates issue preclusion effect, not the 2017 judgment, maybe not even our 2018 judgment, but the May 2022 judgment that entered the same day as the judgment on the WARF II case. Why does that not create issue preclusion effect? And as a shorthand, essentially for the reason that Judge Stark sets out in a couple of paragraphs in his Galderma. Okay, let's see. Different little pieces there. Let me see if I can tackle all of them. If there was to be issue preclusion for WARF II because of the final judgment on the first appeal to this court in WARF I and that that would preclude DOE, the same would hold true in the Exxon case. Second point. As Your Honor just said, it relates to issue preclusion. One of the requirements for issue preclusion is that the issue in the first case and the second case must be identical. The United States Supreme Court in being- Right, but look, is it not perfectly clear that there's a line between that one needs to make a distinction and the problem is how to make the distinction? Different evidence, different theories in support of a position on the same issue, that you don't get a second chance to do. Different issues, yeah, for issue preclusion you do get a second chance. The question is why should a DOE case not be on the first side of that line? Because the Supreme Court's test on whether the two issues are identical whenever issue preclusion comes up is are the legal standards for those two issues the same? But the trouble is that as you just formulated it, you are assuming the answer to the question of whether they are the same issue. It's absolutely clear that if there are different issues, if the issues involve different elements, facts, it's not clear that- Different legal standards. Different legal standards, but that would be equally true of different evidence or theories in support of the same issue. Discrimination can be proved by words or by circumstantial evidence of intent. Maybe, but here, and let me go to another piece. I think you referred to a district court decision which was conclusory on infringement, literally in DOE, later decision by that same district court found completely otherwise with the question of validity and there is some connection there and then this court addressing whether a finding of validity or invalidity on certain grounds would extinguish the validity issues on other grounds and this court found otherwise and I can point you to- No, we appreciate that. We're talking about infringement. Yes, and I'm saying- It's a question of infringement and why it's not legitimate to consider this the same issue or related enough but it's a different, perhaps a different argument with respect to whether it's infringement or not but why isn't this, it's clearly different than validity. Validity isn't going to help you here. I think you would completely erase the Exxon precedent of this court. But the Exxon case was a single case. There was no question of preclusion across cases at all. This is just what you could do on reland of the very same case. The reason I'm citing it here is I think the point of the prior question had to do with if infringement has been decided, it's decided for DOE and literal and then on appeal, the first appeal in the Exxon case, the question was, is it really decided? Because the only thing literally decided was literal infringement and Exxon said, wait, that doesn't mean I can't go to trial on DOE. What about Nystrom? I'm sorry. I mean, what about a case like Nystrom where the parties stipulate to a dismissal that stipulate non-infringement? Is that broad enough to cover DOE and literal when the parties say non-infringement, we agree there's no infringement here? I'm glad you brought up Nystrom and it is different and this would be an instance for Judge Chan which would extinguish the issue. In Nystrom, the plaintiff had an unfavorable construction and it actually moved for summary judgment to be entered against it on infringement. And the Nystrom court said, well, you made the motion for summary judgment of infringement against yourself and that necessarily embraced both literal and DOE. Completely different in our particular case because there was a distinction made between literal and DOE as there was in the Exxon case. DOE wasn't actually litigated in Nystrom though, right? Yes, it was in the following sense. The claim construction was adverse to the patent owner and the patent owner decided it wanted to take everything up on appeal. That's why it made a summary judgment motion against its position to get it up on appeal. So they could have thought to themselves, we still have a DOE case. They didn't say that. They didn't separately litigate DOE but any reasonable reading when the patent donor makes a summary judgment motion against its position on infringement, it will embrace both literal and DOE. Certainly the lawyers would know how to do that. They did not do that. It's completely different in Exxon where a distinction was made. Favorable claim construction in Exxon, Exxon's counsel for tactical reasons decides to withdraw DOE. It doesn't go to the jury. They could have brought it to the jury. So too in Warrick. There was a claim construction consistent with infringement. You can say it's for tactical reasons. You can say that there were other variables at play but it doesn't matter. It was voluntarily withdrawn and it wasn't decided. Thank you very much. I just want to add one other thing. Oh, sure. It's not an entirely well-formed question. Claim preclusion. If you go back to the Foster case which relies on the Young International Trade Commission case, Foster seems to recognize that a later activity can be the subject of claim preclusion under a no colorable differences standard. It doesn't have to be the identical thing. So the analogy here would be let's assume that which I know you're now disputing that the A9, A10 are not colorably different from the A7, A8 with respect to infringement. And then one did a pragmatic analysis which I think is the term borrowed from the restatement of judgments that we used in our discussion of claim preclusion in simple air to say the infringement claim about A9, A10 is not materially different from the infringement claim made against the same defendant in WARF-1. And so claim preclusion should apply. Why should it not? Let me give you just a little bit more detail what happened in WARF-1. The case is filed in 2014. Along the way, the plaintiff war says, hey, we know A9 and A10 are coming down the pike. We want to add it. Apple objects, opposes. The court not only sided with Apple, it said, I'm drawing a bright line in the sand. Don't cross that line. You can't bring A9 or A10 in. Let me assume that there was no voluntary claim. OK.  OK, let me jump to the last piece because I think, Your Honor, you're assuming how A9 and A10 operate for relevant purposes. Aside from what I've already mentioned, we had no ability to test that. We had no discovery. If we go back to the district court and are trying to- And I'm sorry to do this again. I want to assume that away. I know you dispute that. OK. So the question is, why would claim preclusion not apply on the assumption that these were materially the same? Yes. Is it enough that you did not voluntarily claim split? You tried to get it into the same case and were rebuffed. Is that a sufficient reason to reject claim preclusion? Let me take my understanding of your last hypothetical. If the latter products, A9 and A10, we dispute it, are exactly the same. We actually don't know, but let me just assume it. I think that's part of the court's hypothetical question. Right. Under certain circumstances, could claims for infringement, literal and DOE, be extinguished? Yes, under some set of circumstances. But we've assumed things that are really very different from this particular case. So in your hypothetical, literal and DOE was decided against the patent donor in the first case. And second, the newer products are absolutely identical. And in fact, if they came after the judgment, the old Kessler document, the old Kessler doctrine, would have extinguished those claims. The whole point being that if there are other products that are exactly the same, that come after a final finding of non-infringement, the defendant should be free to sell the products. Right? But that's not. Are you accepting that if those were the facts, that the Wharf II, accepting all those facts, that we could rely on the Kessler doctrine here? No. The reason I ask that is that, as you doubtless know, a few years ago, we relied on the Kessler doctrine in personal web. The Supreme Court said, hey, this is kind of interesting. Ask for the government's views. The government said, this Kessler doctrine is actually all wrong. Yes. So it's a little bit. The ice is a little thin, maybe. I agree. I was just giving an example where all the claims might be extinguished, building upon Your Honor's hypothetical. I think the best view was expressed by Judge O'Malley. There used to be, for claim preclusion, a mutuality requirement that was done away with by the Supreme Court. So the Kessler doctrine, I think, should no longer exist. It's unnecessary. So one only needs to go to either claim preclusion or issue preclusion, and neither should apply here. Well, in that same SG's brief, the SG suggests at least that issue preclusion could cover DOE and literal infringement as one, because it's just infringement based on different evidence or different theories. So I assume you disagree with that. Yes, because if that was the case, the Exxon decision wouldn't stand. If there was a final, final judgment of no literal infringement, and somehow a claim based on DOE gets merged into that. I could see. Maybe that could be the state of the law, but that's just not the state of the law. One last question about the CBSG's brief. In a couple instances, that brief recasts some of our Kessler doctrine cases as being perhaps about issue preclusion. Do you agree with that? In other words, it's a speed track and issue preclusion case. Yes. So I would agree with the following. The Kessler doctrine is trying to deal with a particular circumstance. The law has changed. So the current state of the law, I believe, for this case and other cases, is you go to either claim preclusion or issue preclusion, applying the standard doctrines of both of those, period. In other words, Kessler is historical. There's no need for it anymore with modern claim and issue preclusion. And I think that's exactly what Judge O'Malley said. OK. Thank you very much. Thank you very much. Thank you very much. May I proceed, Your Honor? Please. May it please the court. My name is Bill Lee. And together with my partner, Andrew Danforth, I represent Apple. Let me start with Apple II and I think identify three fundamental disagreements we have with it.   The first one is that Apple II is not a legal entity. It's not a legal entity. Three fundamental disagreements we have with representations that were made to you by war. The first is Exxon has nothing to do with preclusion, claim preclusion, issue preclusion, or Kessler. Second is Nystrom was a waiver case, waiver DOA. And the court said so explicitly at page 1285 of the opinion. It uses the word waiver. Third, to go to Judge Taranto's question at the outset, this is a place where wrenching defense from context and a chronological context can cause misimpressions. And the context here, the chronological context, is very important. Mr. Chu refers to the effort to obtain discovery on A9 and A10 early on in the case. We opposed. We opposed because Apple had not yet brought its products to market. When those products came to market during the pendency of the case and before the appeals of this court, there was discovery of the technical aspects of the A9 and A10. The source code for the A9 was produced. A declaration was produced. Documents were produced. None of those documents incidentally are that Cyclone document that you discussed with Mr. Chu, which refers to an A7 product. In addition, their expert, and this has been the appendix the panel has, their expert went and reviewed the source code. All of this occurred before the question of are these products potentially the same arose. And based upon those, we suggest it's After source code, after declarations, after review by their experts. And this is what the district court thought was important. At page 15062, Worf said that the A9 and A10 ships entrenched because they operate in the same manner as the A7 ship. At A6010, it says the A7 products were representative of A9, A9X, A10. At A7005 to 7006, in the post-trial briefing after the jury verdict in Worf, Worf sought injunctive relief, it sought supplemental damages, and it sought ongoing royalties. And what does it say? It said explicitly, after having all of this information, these are the same infringing designs. Now, it's true at the end what occurred was not that the court precluded Worf from bringing the A9 and A10 products in. In fact, Apple and the court invited Worf to bring the A9 and A10 products in. Just for what it's worth, I draw a pretty bright line between what happened before the trial on liability and the proof and what happened later and what happened later. It seems perfectly clear that both parties had some interest in wrapping up the entire dispute in the scope of the ongoing royalty. At least there's one point of some, I hope it doesn't matter, but Worf said it's more efficient to go up on appeal leaving these things out, because you may not need to say anything if Apple wins. In your brief a few times, you translate that into wood, which Worf did not say. But the underlying points about whether, I guess I'm particularly interested in, where are the best places? I think you said 15062, where you stage triggers discovery, where Worf said, we actually now, having looked at the software, think that with respect to coverage by the claim as we see it, the A9 and A10 are the same as the earlier ones. Your Honor, the answer in part to your question is that during the trial of Worf I and the post-trial proceedings of Worf I, Worf II discovery on the technical aspects of the case preceded. That's why the A9 was produced. That's why there's there. You started, I think you read from three statements. Sure. And I did not. So let me take them. 15062 was, I think, your first. Yeah, why don't we go, if you go to your point, let's go to the post-trial briefing first. So go to 87005 to 87006. This is post-verdict. And 7005 to 7006. This is post-verdict. This is after they had access to the A9 source code. This is in Worf II. This is after they had an opportunity to have their expert review it. And what did they say at 7005 to 7006? Same infringing design. Where on the page should I look? If you go to 7006, on the right-hand side. Well, I'm looking at 7005. First paragraph under the bold B heading. Yes. OK. Yes. All right. And then, Your Honor, if you go to 7129. I'm sorry, what was the next page? 7129. I'm sorry, Your Honor. This is during the post-trial briefing again. And the question is whether the A9 and A10 should simply be brought into the case. And it says that there is broad agreement between the parties that the A9, A9X, A10 chips are not more than colorfully different than the A7, A8, and the AX chips with respect to the Q's feature. So Your Honor, the reason I said that it's in the order in which they occurred, this discovery, which they now claim they didn't have, is occurring in WARF-2 at the same time that the WARF-1 trial is proceeding and moving to post-trial proceedings. As a result of that, the A9 and A10 come to market. Discovery is allowed on the A9 and A10. They get the A9 source code. They have their expert come on multiple occasions to review it. We then move to the post-trial briefing period. They get discovery on the A10, which is now on the market. These are just different generations of the same product. And now, before this court's decision in WARF-1, when it's to their interest that these products be identical, they say they are the same. In fact, from October 13, 2015 until the date of this court's decision, WARF consistently said they were the same. They said, operate in the same manner. That goes to my first citation, Your Honor, the 15062. They say it again. Even though, at least to my almost completely ignorant eyes, the excerpts of code in your guys' declaration show something different going on in the code. It's a shift from the AA into the A9. But it nevertheless remains true that there's hashing going on. The number of possible hashes remains substantially lower than the number of possible instructions. And they are, therefore, materially indistinguishable. They are identical in terms of the limitations of the claim. They're identical in terms of what was found to be non-infringing in WARF-1. There can only be 4,096 of these different load tags. There are millions of instructions. By definition, they have to be tagged to groups of instructions. The important thing here is the foundations for the representation to you that preclusion should not apply is the idea that these products are not the same. They are not just substantially similar. They're identical in all material respects. And you don't have to take our word for it. So I came into this argument, I think, as you could probably tell, thinking that actually the premise that we've been talking about a lot now was, in fact, uncontested. So I want to at least, just speaking for myself, I want to accept the premise that there's no material difference with respect to infringement between A9 and A7, to simplify. I'm not sure that that gets you where you need to get to in WARF-2. And can I interrupt just to add to that question? The second point you made was on nitrogen, which has now been recast as an issue of preclusion case. And you mentioned the word waiver. I mean, for issue preclusion, you need adjudication of the issue. I understand most of your argument to be that there wasn't adjudication of the issue because infringement is infringement is infringement. But to rest on waiver, as Nystrom did on an issue preclusion question, seems a little odd to me. It's not. And actually, to go to both questions put together, if you accept the predicate that these products are identical in all material respects, if you take the collection of this court's jurisprudence on claim preclusion, issue preclusion, Chesler, there are different statements made at different points in time on the temporal application of each of the documents. They're not all consistent. But if I take Nystrom and I take Aspect, if we take them together, they're both good laws we sit here today. What they say, what Aspect says, is Nystrom was an issue preclusion case. The issue was infringement. Infringement was litigated. The fact that there are independent theories of infringement and one was waived is not relevant to whether it was substantively adjudicated because infringement was. And to remind the panel, in WARF 1, the reason that footnote 5 is in the opinion is that when WARF 1 was briefed to the panel, Apple said in its opening brief, WARF abandoned the doctrine of equivalence. When WARF filed its brief, it did not contest that. In reply, we pointed out to the panel that they did not contest that they abandoned it and what the reasons for the abandonment were. And that led to footnote 5. This is, if you ask to take Nystrom and Aspect together, the only way that WARF can escape issue preclusion is if you view infringement under the doctrine of equivalence and literal infringement as two separate issues. And they're not. Under B&B, if the same legal standard applies, they're the same issue. So where does waiver fit into this? Because waiver is giving me a problem. And what if there were no waiver? I mean, in Nystrom, they had a stipulation of non-infringement. We use the word waiver. I'm not quite sure why we call that a waiver as opposed to the theory you're giving us now, which is infringement is infringement is infringement. The question is, was infringement litigated? So let's assume, in Nystrom, rather than there be what they characterize as waiver, they just decided to pursue a literal infringement claim. Nothing else, right? They can't come back later and say, oh, OK. That's what I wanted to be. No. So whether it's characterized as waiver, or as Mr. Judy did in answering Judge Shen's question, suggesting it was actually litigated, infringement was actually litigated in the same way it was in WARF 1. So if you take Nystrom, and you take ASPECT, the only way to escape issue preclusion is if infringement can be subdivided into two issues. Well, 271 is the infringement statute. It refers just to infringement. Would you make the same argument if the two different kinds of infringement that issue were 271A versus, say, 271C? I think you're right. To take an example this court has addressed, let's say that one is direct infringement, one's inducement. Yeah. Those are different statutes. There are different types of infringement. We're talking about the same type of infringement. And under E&B, the question is, what's the legal standard? Not what's your theory, not what's your evidence. The legal standard is, first, 271A refers to infringement. How do you prove infringement? Each and every element of the claim. And you also would not distinguish making, and using, and selling, and offering, and importing? You wouldn't break it. You can't. The idea that you could, to go to Judge Post's question, the idea that you would bring a case, claim little infringement by the making, and then come back and say, oh, we lost that, but we never asserted using. Well, that's one of the things that the Supreme Court actually explicitly said in Kessler. They talked about the rationale for that. I'm not sure if I fully answered your question. But the answer, I think, is, if we step back from all of this, we know three things. One is, these are the same parties. These are the same patents. These are the same accused features. Now, I understand that there's a dispute here. But I think on this record, when you look at it, there can be really no dispute. And in fact, the district court expressly found that there was not only no dispute, but that Wharf had been consistent in saying there was no dispute. But how can it be the same thing if you can get a different result based on these two theories? I mean, no, no. It's the same feature, Your Honor. It's the same feature. It's the same feature. Right. If it's the same, it's true. But how is the issue actually adjudicated? The issue of infringement was actually adjudicated in the first case. There's a different legal standard under a doctrine of equivalence when you're using the insubstantial differences test versus literal infringement, where you're actually looking for an identity of the features between these two products. No, Your Honor. The standard is still, do you have each and every limitation of the claim, either literally or equivalently? And that's the standard. And it's not two different standards. In fact, as this court has said, the DOE is an exception to prove literal infringement. So the standard is the same. And the best indication is the case they rely upon, B&B. That was a case where there were two different regimes. One was trademark registration. One was trademark infringement. Actually, they articulated bases to determine the likelihood of confusion was different under the case law. But they said, no, there's the same issue. Infringement is the same issue. It is as a matter of the statute. And it is as a matter of the case law. Do you happen to remember the next level of detail down about the difference between the two bases of the argument for likelihood of confusion? The answer, Your Honor, is I don't off the top of my head. But I do remember that the opinion itself articulated the fact that the B&B, and they actually found it to be the same issue, ultimately. So to get to your question, if those types of differences at that granular level can make a difference, it would have made a difference there. The issue here is infringement. And when you have a case where the issue of infringement was litigated in the first case, where the decision by Wharf not to pursue DOE had nothing to do with claim construction, but as the court says, it's A8 and A9 and A12, and is completely supported by what the court said earlier. I think it's 15-590. Here's the reason that DOE wasn't pursued. It was a conscious strategic decision that had nothing to do with claim construction. If you take the fact that that is why DOE was not pursued, if you then accept it's just a part of the way I think the other side makes the argument, which would say, well, it had something to do with claim construction. That is, it's absolutely clear that if the district court back in 2017 had adopted the claim construction we adopted in 2018, they certainly would have had to go with DOE. On the other hand, I think it's also right to say that the reason that they withdrew their DOE assertion was not specifically about claim construction, but it's because the premise that they were proceeding on was that they had a claim construction under which they could continue to make their literal infringement argument. Your Honor, the effort by Wharfe to basically try to fit this within Exxon, it doesn't work because the reason that Exxon reached the decision it reached was because there was a causal connection between the claim construction and the decision that was made in the Doctrine of Equivalence. There's no causal connection here. In fact, it's demonstrated to be the opposite. That's why in the first appeal, when we said it was abandoned, they didn't object. We pointed out in reply, and this court had footnote five, to allow them to. And the district court has made a finding of waiver, which is subject to an abusive discretion review by this court. What they're asking you to do is to ignore the reasons that they made the strategic decision not to forego pursuing the Doctrine of Equivalence. They're asking to ignore the explicit reasons the court said at the time. They're asking to ignore what the court said post-trial. And then they're asking you to ignore what happened at this court. That can't be the correct result. And Exxon doesn't help them because there was a causal connection, for lack of a better term, between the two. But I guess going back to the fact that Exxon, if instead of in the same litigation trying to reassert DOE on remand, the plaintiff there filed a second litigation pursuing the DOE theory that it had not pursued in the first litigation. I guess in your view, they would be precluded under issued discretion. And Nystrom would tell you they are precluded. Right. Nystrom is a difficult case to understand, given how it arguably got patched up by Aztec, when Aztec didn't actually go through the analysis of whether the so-called waived DOE theory was in fact actually litigated. So there's some instability in trying to understand how to fit together what Aztec was trying to do to Nystrom. But just going back to the facts of Exxon and making this alteration to them, in your view, the plaintiff would be barred under issued preclusion if it brought a second case under DOE theory. Absolutely. And Exxon has almost that. But that goes against a little bit of some of the reasoning in our Exxon opinion, where we said we're going to let it go and not block the plaintiff from pursuing a DOE theory on remand. Your Honor, Exxon has, in our view, respectfully, nothing to do with preclusion. It is Nystrom. I'm making adjustments to the fact pattern, because now it could bring issued preclusion into play. And if it did, you'd get to Nystrom. If we were to posit this hypothetical, do you have Nystrom? Aspect has said that the language in Nystrom that refers to race judicata or claimed preclusion more accurately should have been issued preclusion. I think that's the subject of some debate. But let's accept that. Let's accept that, because that's the most recent articulation by this court. It's issued preclusion. On the critical facts that were found to result in issued preclusion, whether, Your Honor, it's characterized as waiver or otherwise, there is nothing to distinguish this case from Nystrom. So if this court were to write an opinion that said that issued preclusion, claimed preclusion, Kessler, that no preclusion doctrine applies, it would be impossible to reconcile with Nystrom, even as interpreted by Aspect. And this is not an article I make for rhetorical purposes. I mean, I guess what I keep hearing is an argument that just keeps reducing to this central, I'm just going to call it the Dalderma principle, that the question of 271A infringement is a single issue, because it is easy to distinguish on the facts Nystrom from this case. Nystrom said openly, including we do not think under this claim construction that we can prevail on infringement. There was no separate abandonment of DOE before it said that about infringement. Now, your point, I think, just keeps coming back to that. Yes, there's a difference, but it's not a legally relevant difference, because infringement is a unitary issue. Correct. I mean, I think there are two central facts to the preclusion issues, which are that we think that it's a matter of the undisputed record, and the district court so found. These products are, in all material respects, the same. Our product hashes. It doesn't. It has a group of float tags. It doesn't have a single one. Right, this is, I think, a trivial point, and maybe it's inherent. But in your brief, you just say it hashes. You need the idea that the number of different hash results is substantially less than the number of instructions, which you don't mention. Your affidavit mentions, but your briefs do not mention. It's not just that they hash. They hash, and as a result, when you're hashing it at 12, which is what ours do, you have 4,096 possibilities. That's the same. And there's no dispute that that's the same. So really what WARF is asking you to do is to look at all of the different preclusion doctrines and say that when you have the same parties, the same patent, the identical feature, and infringement has been adjudicated, you can get a do-over on the doctrine of equivalence. And you can't, and you can't particularly if you've strategically abandoned it for that purpose. Let me just add one more point on Kessler. Can I just go back to issue preclusion? Sure. I just want to get a clarification. Do you feel like you have three separate and independent paths to win on issue preclusion? Yes. One is Nystrom. Whatever happened in Nystrom, and you federal circuit call it issue preclusion. Therefore, that kind of waiver amounts to something called actually litigated according to your precedent. And then alternative two, infringement is infringement. And so any form of infringement that is litigated, actually litigated, litigates the bottom line infringement question. Are those two separate things? Or is it one thing that is just kind of articulated in different ways? I think there's no fallout between the two. And the way I would phrase it is that if we take Nystrom and accept Aspect's interpretation of Nystrom, then the issue that was substantively litigated, which is one of the four requirements, is, in fact, infringement. It's not its subparts. It's not making, using, or selling. It's not little or equivalent. Given that issue was litigated, it doesn't matter to go to Judge Post's point about waiver. It doesn't matter why DOA wasn't pursued. All that matters is there was an opportunity to litigate infringement. It was litigated all the way through this court, and there was found to be no infringement. But in our case, it was not litigated. In our case, it was litigated, Your Honor. Infringement was litigated. No, but DOE wasn't. DOE was, as we've talked about, it was waived. We're struggling here about what weight we give to the waiver portion of this. And I think, Your Honor, the words could be a little redundant. I don't think it matters that it was waived. Let's say rather than the conscious waiver that you have in the record before you, they just decided not to claim equivalent infringement, which happens all the time in the district courts. If infringement went to the jury and came back and this court overturned it on the basis it did in WARF-1, infringement was litigated. And they couldn't. They were briefed before. You can't come back. So I was trying to correct the record in terms of what happened in Nystrom. But the fact that it was waived is not what's key. The fact is that it is a single issue. And I think Judge Stark's opinion in Galdorama wasn't just a passive reference. He goes through and talks as a matter of policy and what the preclusion documents are intended to get at and why it's a single issue. And he was correct. And the SGA's brief treats them as a single issue. Can I just, before you get to Kessler, I just judged Toronto, I think, with Mr. Chiu raised the alternative, which is claim preclusion, assuming that if we staying away from Kessler. There's a temporal problem for you in claim preclusion. But I'm not clear about it. Because they filed the complaint before the final judgment. What were their sales and stuff going on on the A9 and the A10 before final judgment? All the A9 and A10 products that are an issue were sold before final judgment. Because the patent expired. Because the patent expired. So there is claim preclusion, we'd suggest, for any products sold before the case was filed. Before they went to final judgment. No. If you just take the filing of the complaint, I don't think we disagree that claim preclusion applies to those products. I'm a little concerned about how, for infringement, you're saying any theory of infringement gets rolled up once infringement gets litigated. But we've said that's not true for validity. And your response to that is, well, there's different sections of validity. But that sounds overly formalistic to try to say that that's the distinction between validity and infringement. If you pursue certain grounds of validity and for whatever reason don't pursue others, we've said, well, you're not. There's no issue preclusion for those held back in validity grounds. I don't think, Your Honor, the court's gone that far. It depends upon what the invalidity argument is that you're making and what the new argument is that you're making. Reaching that question, which it's not, it doesn't present itself on the record, the fact that there are a variety of, not a variety, there are a number of different invalidity provisions, 101, 103, 102, 112. There's one infringement. There's one infringement statute. Right? And it says infringement. And I think Judge Ciamarra's question is correct. Could a party assert that there was infringement, either literally or equivalently, by making, and then come back and say, oh, wait a minute. We lost that one. We have a new idea. We're going to come back and say you infringe by using or by selling. The answer clearly has to be no. Those are different theories. And they're different evidence, perhaps. But there's the same issue of infringement. And while the SG has considered or addressed the Kessler and its future, this court has applied Kessler in circumstances after the elimination of non-mutual defensive collateral estoppel. And in fact, in C-TRAC and MGA, two cases that were raised in the reply, this court applied Kessler to products that were sold post-filing the complaint, pre-judgment, in precisely the same way it does here. So Judge, just to go back to your question, if infringement is one issue, they're issue precluded. If the court somehow concludes there are separate issues covered by different standards, that's precisely what Kessler is intending to cover. Even work concedes that Kessler covers. So you would prefer a victory based on issue preclusion than Kessler? Yes. But I think that the honest answer is when you look at the record, there's a reason we briefed you claim preclusion, issue preclusion, Kessler. Because all three of the doctrines are supposed to work together. And in fact, do work together. And the real question for this panel is if you step back and you say to yourself that same parties, same patents, identical products, and infringement was tried once to a jury and adjudicated here, do these policies and these principles contemplate allowing someone to re-litigate the issue again 10 years later? And the answer has to be no. And I think however you look at the specifics of Nystrom, when you look at the facts that overlap Nystrom here, it is virtually impossible to write an opinion that would say the preclusion doesn't apply here, but it did in Nystrom. Thank you. Thank you. Mr. Chu, we still have four minutes everybody. I'll try to address just four points. Mr. Lee cited to the court certain pages, 7005, 15062, as examples, as supposedly standing for the proposition that Whorf was making concessions about A9 and 10 being the same.  But regardless of those pages, they were in 2014 and 2015, we hadn't seen a single line of source code until 2016. The statements made in post-trial proceedings, whether to wrap things up or not, well, it was resolved not everything was going to be wrapped up, and then discovery was completely stayed. Second point. There was an argument about footnote 5, which said Footnote 5 of what? Of the first Whorf decision by this court about abandoning DOE, right? A short line or two. Well, that wasn't an issue that was litigated. That footnote wasn't a decision. And you could read it in a variety of ways. You could use abandon. You could say withdrawn. One could have said waiver. But the fact is DOE was withdrawn, didn't go to verdict. The same was true with respect to Exxon. Third point. There was a discussion that revolved around Nystrom, Golderma, and some other cases. Golderma is a case where there was a controlling Supreme Court case on issue preclusion, B&B hardware. It's not cited at all. It's a very short conclusory discussion. So we have to go. We today, this court, needs to go to B&B hardware and thinking about issue preclusion. And B&B says the first issue and the first case have to be identical to the second. And the test for whether they're identical is whether the legal standards are the same. You could think about that in terms of jury instructions. And if anything, DOE is the opposite of literal. By definition, there wouldn't be DOE infringement if there's literal infringement. So there's no literal infringement. We accept that from the first appeal. So DOE has different legal standards. It assumes, unlike literal infringement, that not all the limitations are met literally. And it applies an insubstantial difference test or a function wave result test. None of that is relevant for literal infringement. So the legal standards are different. There cannot be, under existing case law and the Supreme Court's case law, any issue preclusion. Now, I want to spend just a moment. There were some questions and statements about technology. Bear with me for one minute. This invention is a way to have faster execution of instructions. And the basis is you could execute a lot of instructions, load instructions, out of order, and speculate that it won't cause a problem. But it might cause a problem. And if it causes a problem by a misspeculation where some information should have been stored before the load instruction was executed, then the computer has to backtrack, redo things, and then it becomes inefficient. So the invention is a predictor trying to predict when a particular load instruction might lead to a misspeculation. So here's how it gets implemented. And these will be the issues on doctrinal records which were not fully litigated. The Apple processors, most processors, have a very limited instruction window. The entire program may have billions or hundreds of millions of lines of code. But it has an instruction window that's always changing, always moving, of a few hundred instructions. That's what's relevant. This court, in the first decision on appeal, said, well, it can't be the case that the load tags are associated with one and only one load instruction, thinking in the abstract about billions of lines of code. And that's because the names, the nicknames, given to each load instruction are 12-bit. So it's one- I think I need to bring you to a close. Okay, if I can just finish in a moment? Yeah. So what they do is they use these 12-bit names, 4,096 different names, for a few hundred instructions, only some of which are load instructions. And the evidence is that the Apple engineers said, we want something that's gonna work as carefully, precisely, as if it was complete, without using all resources. So they fine-tuned it so that 99.9% of the time, there would be an exact association for the prediction and the associated load instruction. Litigated in our work one decision, is that right? It was in the following sense. In worth one, yes. No, in the following sense. If you recall, we kind of made a ruling that there were millions of load instructions. Yes. And just 4,000. Yes. So in a literal sense, for the entire program, this court's conclusion was, there was no literal infringement. But that's why the doctrine of equivalence is relevant. Thank you. And thank both sides, the cases submitted.